# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FT. MYERS DIVISION

**GREGORY D. CHRISTOPHER,**

    **Plaintiff,**

**v.**                                                            Case No. 2:10-CV-385-FtM-DNF

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    **Defendant.**

_____/

## **OPINION AND ORDER**[1]

The Plaintiff filed an application for a period of disability and disability insurance benefits and Supplemental Security Income on November 8, 2006, alleging disability beginning October 31, 2005. This claim was denied initially and upon reconsideration. On April 16, 2009, a video hearing was held before Administrative Law Judge Rubin Rivera, Jr., from Fort Lauderdale, Florida [Tr. 18]. On June 11, 2009, Administrative Law Judge Rivera issued his decision denying the Plaintiff's applications. [Tr. 18-24] The Appeals Council denied the Plaintiff's Request for Review on October 16, 2009, [Tr. 8-10] making the ALJ's decision the final decision of the Commissioner. For the reasons set out herein, the decision is **REMANDED** pursuant to 42 U.S.C. 405(g) and 1383(c)(3).

The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties have filed legal memoranda.

---

[1] Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated October 6, 2010. (Doc.# 22).

## I. SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ DECISION AND STANDARD OF REVIEW.

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his/her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511. The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

On November 8, 2006, Plaintiff filed his applications for Disability Insurance Benefits and Supplemental Security Income alleging disability beginning October 31, 2005. The Decision of ALJ Rivera dated June 11, 2009, denied Plaintiff's claim for benefits. (Tr. 18-24). At Step 1, the ALJ found Plaintiff has not engaged in substantial gainful activity since his alleged onset date of October 31, 2005.[2] (Tr. 20). At Step 2, the ALJ found that Plaintiff has the following severe physical impairments: visual disturbance hemangioma[3] and history of tuberculosis in the bone (Tr. 20). At Step 3, the ALJ found that during the period in question, Plaintiff did not have an impairment or combination of impairments which met the criteria of

---

[2] Plaintiff worked after the disability date but this work activity did not rise to the level of substantial gainful activity. Plaintiff's monthly countable average earnings fall short of the substantial gainful activity requirements 20 C.F.R. 404.1574(b)(3)(I).

[3] Hemangioma is a benign tumor composed of dilated blood vessels and often encapsulated within a fibrous shell. It may be found on the skin, or in an internal organ.

any of the listed impairments described in Appendix 1, Subpart P, Regulation No. 4. At Step 4, the ALJ found Plaintiff capable of performing his past relevant work ("PRW") as a cook and found that Plaintiff retained the residual functional capacity (RFC) to perform the full range of light work [Tr. 21]. In the ALJ's RFC, he found Plaintiff was able to " lift 20 pounds, frequently lift 10 pounds, stand or walk for a total of 6 hours in an 8 hour work day, and sit for a total of 6 hours". The ALJ made this finding based on the physical ability of the Plaintiff. Accordingly, the ALJ found the Plaintiff not disabled at step five of the sequential evaluation. 20 C.F.R. §§416.1520(f) and 416.920(f).

The court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied. See 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11thCir. 2002). Substantial evidence is something more than a mere scintilla, but less than a preponderance. See *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." The court may not reweigh the evidence or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision.

## II. REVIEW OF FACTS

Plaintiff was born on April 16, 1960 and was forty-five (45) years old at the time of the Administrative Hearing. Plaintiff attended high school up to the 10th grade and later obtained a GED (Tr. 62, 122). Plaintiff's work history has been as a pile driver, cook and carriage man (Tr. 56-57, 124-127). Plaintiff worked various jobs as a cook from 1974 to October 2005 (i.e.,

short order cook, event meal planner and kitchen manager). Plaintiff last worked in November of 2005 as a cook (Tr. 198) (Tr. 117, 126, 129).

Plaintiff was diagnosed with TB involving the vertebral bone (T-5) in December of 1999. Plaintiff underwent surgery in 2000 which involved removal of part of the right lung and also the bone. Plaintiff has both a thoracotomy scar and a scar over the upper thoracic area. Plaintiff meets the insured status requirements of the Social Security Act through June 20, 2009.

In December of 2005, Plaintiff was seen by Mary Lou Kircher-Carbone, O.D. Plaintiff complained of decreased vision in his "better (left) eye" and "watery eyes" while working at a restaurant (Tr. 169-70). Upon examination, Dr. Kircher-Carbone found the visual acuity in Plaintiff's right eye (OD) was 20/200 without correction and 20/50 with correction; the visual acuity in his left eye (OS) was 20/60 without correction and 20/70 with correction[4]. The doctor diagnosed amblyopia in Plaintiff's left eye and cataracts in both eyes. Dr. Kircher-Carbone recommended that Plaintiff consult with Dr. Quigley regarding cataract surgery and for a new prescription for glasses, as his current prescription was "No help". (Tr. 169)

Plaintiff was then seen at Johns Hopkins Medicine on April 19, 2006, by Cathy DiBernardo, R.N., R.D.M.S. who performed an echograph of the right eye. The record shows Plaintiff was referred by John Minkowski, M.D. The echography was read by James Handa, M.D., who located the tumor in the right eye. The tumor was "small, slightly dome shaped, regularly structured, highly reflective lesion at the posterior pole tempmorally. Maximal thickness measures about 2.0mm. The basal diameter measures 6.5 laterally X 7.9mm radially. No distinct vascularity is noted. A small focus of calcium is noted at the posterior edge of the

---

[4] A review of Dr. Kircher-Carbone's handwritten notes in the transcript confirms Dr. Kircher-Carbone specifically wrote the diagnosis of "OS 20/60 without correction and 20/70 with correction.

lesion" IMPRESSION: "Lesion too small for differentiation. High reflectivity and regular structure are echographic characteristics that are seen most often with nevi, choroidal hemangioma and scar tissues". (End of Report). (Tr. 177-178).

On July 25, 2006, Dr. Minkowski wrote to Plaintiff enclosing a prescription for multi-focal glasses or bifocal glasses to improve his distance and reading vision, particularly for the right eye. Dr. Minkowski told Plaintiff that his right eye "is a hemangioma which is vascular nodule ..." Dr. Minkowski advised Plaintiff of a new treatment called Photodynamic Therapy (PDT) which he thought would be beneficial in shrinking the size of the hemangioma and improve his eyesight, but that the treatment could run as high as $10,000 just for the initial treatments. Further, if he was interested to contact him directly[5]. (Tr. 182).

Plaintiff was referred to Dr. A. Neil Johnson, M.D., by the Division of Disability Determinations. Plaintiff underwent a medical evaluation on June 15, 2007, with Dr. A. Neil Johnson. Plaintiff's chief complaints were "Back, chest pain, blindness, TB of the bone." Plaintiff advised he was diagnosed with TB in December of 1999 and underwent surgery in 2000 for removal of part of the right lung and also the bone. Plaintiff reported constant pain and numbness over the right scapula. Plaintiff advised he avoided lifting because of the "pain". Plaintiff stated he is single and has been homeless for three years. Plaintiff takes over the counter medications for pain. Plaintiff advised he received over eighteen months of drug therapy (anti tubercular strikes) for his TB (Tr. 184, 198).

Plaintiff also reported to Dr. Johnson that he has "blindness in the right eye". He has been diagnosed with a hemangioma of the right eye and his left eye is also impaired. Dr.

---

[5] Plaintiff did not have health insurance nor could he afford the cost, so Plaintiff was unable to receive this treatment.

Johnson measured his vision to be 20/50 in the left eye. Plaintiff further advised that he has not driven a car for four years because of his vision and cannot read the newspaper.

In regard to Plaintiff's physical impairment, Dr. Johnson found Plaintiff's speech to be clear, his walking unimpaired and he was in no acute distress. Plaintiff's motor and sensory functions were intact, reflexes normal, with no disorientation noted. Dr. Johnson concluded "The patient's visual acuity in the right eye is greater than 20/200 and could not be corrected with a pinhole. Visual acuity to be 20/50 in the left eye". (Tr. 200).

On May 10, 2007, Scott L. Geller, M.D., consultative examiner completed a visual evaluation report for the Office of Disability Determination. Dr. Geller reported Plaintiff had decreased visual acuity in his right eye and was diagnosed with a choroidal hemangioma (Tr. 195). Plaintiff also reported he had amblyopia in his left eye since birth. On examination, Dr. Geller found Plaintiff's visual acuity without correction was 20/400 on the right and 20/60 on the left; however, "with best correction", Plaintiff's vision could be 20/40 in both eyes. In answer to the question "Can this person's impairment be improved by treatment/surgery", Dr. Geller wrote "yes-r" (Right eye). Dr. Geller did not answer the question "Is there any abnormality/limitation in peripheral field of vision on confrontation testing? Right Eye? Left Eye?" (Tr. 195).

On February 19, 2009, Dr. Michael J. Vickers examined Plaintiff. (Tr. 209-10). Plaintiff went to Dr. Vickers for follow-up of neck pain, mild right upper extremity weakness, chronic headache, and a history of Pott's disease[6] (Tr. 209). He told Dr. Vickers that Lortab® was working better than his previous pain medication and his muscle relaxants were working well

---

[6] "TB involving the spine is often referred to as Pott's disease." See U.S. National Library of Medicine and National Institutes of Health, Medline Plus, *A.D.A.M. Medical Encyclopedia*

(Tr. 209). Plaintiff was taking Goody's powder for headaches and reported that his headaches were less frequent with the addition of the muscle relaxer. Dr. Vickers concluded that Plaintiff's chronic pain regimen was working reasonably well and continued his medications as needed (Tr. 200). Dr. Vickers planned to send Plaintiff to physical therapy to see if it would decrease his need for medication.

On March 12, 2009, Dr. Tom Ghuman examined Plaintiff at the request of Marianne S. Geraci, M.D. of the Montgomery Eye Center. Dr. Ghuman found Plaintiff's visual acuity was 20/70 on the right and 20/60 on the left (Tr. 211). A review of Plaintiff's previous angiogram revealed no significant change in the size of his choroidal hemangioma and the fluorescent angiogram revealed "hyper fluorescence in the area of the choroidal hemangioma in the right eye with leakage in the late frames" (Tr. 212). Dr. Ghuman urged Plaintiff to consider "PDT" to treat his hemangioma and perhaps improve his vision. Plaintiff advised Dr. Ghuman he could not afford to have the treatment done. (Tr. 211-12)

**III.    SPECIFIC ISSUES AND CONCLUSIONS OF LAW:**

    **A.    ALJ DETERMINED PLAINTIFF COULD RETURN TO HIS PAST RELEVANT WORK AS A COOK**

Plaintiff argues the ALJ erred by ignoring medical evidence dealing with the constant pain in his back that interferes with his ability to lift and he has headaches that are painful. (Tr. 62-63). Plaintiff contends the pain, headaches and the decrease in his visual acuity affect his ability to return to work as a cook.

The Eleventh Circuit has said that, to establish disability based on testimony of pain and other symptoms, a claimant must satisfy two parts of a three part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the

severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *Wilson*, 284 F.3d at 1225.

In this case, the ALJ cited the appropriate regulations in evaluating Plaintiff's subjective allegations (Tr. 21). After evaluating the evidence and testimony the ALJ determined that, although Plaintiff has underlying impairments that could be expected to produce the symptoms he alleged, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible (Tr. 22-23). In reaching this conclusion, the ALJ cited objective medical evidence and information about Plaintiff's activities that contradict his allegations of disabling symptoms and functional limitations. As stated, Plaintiff alleged upper back and neck pain and headaches on a daily basis (Tr. 60, 63, 130). However, in December 2006, Plaintiff reported that Goody's powders relieved his pain for up to two hours (Tr. 130). Plaintiff indicated he was able to do personal care, house cleaning on a slow and steady basis, laundry, and a little home maintenance despite any symptoms that he experienced (Tr. 130-31).

The ALJ observed that, in June 2007, Dr. Johnson reported Plaintiff could walk up to two miles, stand one to two hours, climb stairs and ladders, and ride a bicycle (Tr. 22-23, 198). Moreover, contrary to his hearing testimony, Plaintiff indicated that he could lift up to thirty pounds before experiencing significant ill effects (Tr. 198). Dr. Johnson also found upon examination that Plaintiff's joints were free of tenderness, erythema, and effusion, and he had normal range of motion in his cervical spine, shoulders, and elbows, as well as full use of his hands (Tr. 199-200).

In February 2009, Plaintiff told Dr. Vickers that his current pain medication was working better than previous ones and his headaches were less frequent with muscle relaxing

medication (Tr. 209). Dr. Vickers concluded Plaintiff's chronic pain regimen was working reasonably well and it was expected that he would gain additional benefit from prescribed physical therapy (Tr. 210, 215). Further, not one of Plaintiff's examining or treating sources identified any functional limitations that would prevent Plaintiff from performing the demands of light work.

Plaintiff also argues he has pain from his visual condition. (Pl.'s Br. at 6). However, the medical records did not reflect complaints of pain associated with Plaintiff's hemangioma. Plaintiff also testified the glasses prescribed for his decreased visual acuity cause headaches; however, again as noted above, Plaintiff's headaches have responded to medication and Dr. Vickers concluded his pain regimen was working reasonably well.

The Eleventh Circuit has recognized that credibility determinations are the province of the ALJ. In making a credibility finding, the ALJ must articulate specific reasons for questioning the claimant's credibility and the reasons for rejecting his testimony must be supported by substantial evidence. *Hale v. Bowen*, 831 F.2d 1007, 1011-1012 (11th Cir. 1987). Based upon the record, the ALJ considered Plaintiff's subjective complaints of pain and provided adequate reasons supported by substantial evidence for discrediting those complaints.

Plaintiff also asserts that he could not return to his past relevant work due to his impaired visual acuity. Plaintiff notes that under the full definition of CHEF as listed in the DOT provides that "the job of cook, chef; kitchen chef, requires 'frequent near visual acuity'". (Pl.'s Br. at 6-7). Plaintiff testified, "I couldn't read the print they used to put the orders in with". (Tr. 57, 58). Plaintiff therefore contends his decreased visual acuity would prevent him from performing his past relevant work as a chef.

In this case, the ALJ determined Plaintiff was not disabled at Step 4 of the five-step analysis. As a result of his "RFC" analysis, the ALJ found Plaintiff is capable of performing past relevant work as a chef because "this work does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity" (Tr. 23). However, the ALJ's determination that Plaintiff could perform the physical aspects did not show the ALJ considered Plaintiff's visual impairments. The ALJ's opinion shows no evidence that the ALJ considered the impact of the visual impairments on Plaintiff's ability to perform this past relevant job as a chef. Having found that Plaintiff is "limited in his visual acuity" the ALJ was obligated to consider and evaluate how this non-exertional impairment would impact his ability to work as a chef. Nothing in the ALJ's decision indicates the job requirements of a chef, either generally or as performed by Plaintiff.

The Commissioner's finding at Step 4 that Plaintiff could perform his past relevant work is therefore not supported by sufficient factual findings in which the ALJ discusses the job requirements of a chef and how these may be satisfied by a person with Plaintiff's vision impairments. In the absence of such statements, a reviewing court is unable to determine whether the ultimate decision on the merits is rational and supported by substantial evidence. *See*, *Gibson v. Astrue,* 2011 WL 307690 at *1 (M.D. Fla. Jan. 28, 2011) (citing *Winschel v. Comm'r of Soc. Sec.,* 2011 WL 198372 at *2 (11th Circuit. Jan. 24, 2011)).

### B. THE ALJ ERRED IN NOT PROVIDING A VOCATIONAL EXPERT AT THE HEARING

Plaintiff argues that "since the ALJ did not have a vocational expert (VE) present, it is not possible to determine if Plaintiff's impairments prevented him from doing any work". (Pl.

Br. 7-8) Plaintiff also argues if the vocational expert had attended the hearing, it would have been possible to ask a hypothetical question about whether a visual limitation such as Plaintiff's would have prevented him from doing his prior work. The Commissioner argues that there is no requirement for the ALJ to call a vocational expert because the ALJ decided this case at Step 4 and is not required to call a vocational expert until Step 5.

"Indeed, although VE testimony is not required in determining whether a clamant can perform his past relevant work, *Lucas v. Sullivan*, 918 F. 2d 1567, 1573 n.2 (11th Cir. 1990), the regulations provide that 'the services of vocational experts or vocational specialists' may be used in making this determination because such an expert 'may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy" 20 C.F.R. 404.1560(b)(2). *Henns v. Commissioner of Social Security*, 130 Fed. App'x 343, 346 (11th Cir. 2005). Therefore, the ALJ did not err by failing to have a VE testify at the hearing.

Plaintiff notes that under the full definition of CHEF as listed in the DOT provides that "the job of cook, chef; kitchen chef, requires 'frequent near visual acuity'". (Pl.'s Br. at 6-7). Plaintiff testified, " I couldn't read the print they used to put the orders in with". (Tr. 57, 58). Plaintiff therefore contends his decreased visual acuity would prevent him from performing his past relevant work as a chef.

In this case, the ALJ determined Plaintiff was not disabled at Step 4 of the five-step analysis. As a result of his "RFC" analysis, the ALJ found Plaintiff is capable of performing past relevant work as a chef because "this work does not require the performance of work-

related activities precluded by Plaintiff's residual functional capacity" (Tr. 23). However, the ALJ's determination that Plaintiff could perform the physical aspects did not show the ALJ considered Plaintiff's visual impairments. The ALJ's opinion shows no evidence that the ALJ considered the impact of the visual impairments on Plaintiff's ability to perform this past relevant job as a chef. Having found that Plaintiff is "limited in his visual acuity" the ALJ was obligated to consider and evaluate how this non-exertional impairment would impact his ability to work as a chef. Nothing in the ALJ's decision indicates the job requirements of a chef, either generally or as performed by Plaintiff.

The Commissioner's finding at Step 4 that Plaintiff could perform his past relevant work is therefore not supported by sufficient factual findings in which the ALJ discusses the job requirements of a chef and how these may be satisfied by a person with Plaintiff's vision impairments. In the absence of such statements, a reviewing court is unable to determine whether the ultimate decision on the merits is rational and supported by substantial evidence . *Gibson v. Astrue,* 2011 WL 307690 at *1 (M.D. Fla. Jan. 28, 2011) (citing *Winschel v. Comm'r of Soc. Sec.,* 2011 WL 198372 at *2 (11th Circuit. Jan. 24, 2011)).

## IV. CONCLUSION

1. The decision of the Commissioner is **REVERSED** and the matter is **REMANDED** to the Commissioner of Social Security pursuant 42 U.S. C. 405(g) and 1383(c)(3) so that the Commissioner can develop the record and determine the affects of Plaintiff's visual acuity regarding his past relevant work and residual functional capacity of light work. If necessary, the Commission may proceed to Step 5 of the sequential evaluation process and obtain the assistance of a vocational expert.

2.      The Clerk of Court shall enter final judgment consistent with this Opinion and Order and close the file.  The final judgment shall state that if the Plaintiff ultimately prevails in this case upon remand to the Social Security Administration, any motion for attorney's fees under 42 U.S.C. 406(b) must be filed within fourteen (14) days of the Commissioner's final decision to award benefits.

**DONE** and **ORDERED** in Chambers in For Myers, Florida this 30th day of September, 2011.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record